# 21-2553

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆—◆

SAMUEL H. BLACK, BERNARD BLACK,

*Plaintiffs-Appellants,*

—against—

CHERIE WRIGLEY, ESAUN G. PINTO, SR., CPI INVESTIGATIONS,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)

**BRIEF FOR PLAINTIFFS-APPELLANTS**

BERNARD S. BLACK
2829 Sheridan Place
Evanston, Illinois 60201
(847) 807-9599

*Plaintiff-Appellant Pro Se
and Attorney for Plaintiff-
Appellant Samuel H. Black*

Table of Contents

TABLE OF AUTHORITIES .................................................................. iv

JURISDICTIONAL STATEMENT ........................................................ vi

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES............................................................. 9

STATEMENT OF THE CASE................................................................ 13

FACTUAL BACKGROUND................................................................... 14

    A.  Pinto's Long History of Using Joanne Black's Mental Illness to Steal from Her................................................................................................ 14

    B.  Defendants' Theft of Funds from Chase and Wells Fargo Bank Accounts ................................................................................................ 15

    C.  Defendants' Theft of Joanne's SSDI Benefits.................................... 17

    D.  Fraudulent and Inflated Charges for Services not Provided.................... 18

    E.  False Expense Reports, Inflated Bills, Double-Billing. .......................... 19

    F.  Pinto and Wrigley Repeatedly Lied Under Oath to Cover Up Pinto's Theft of Assets that Gave Rise to This Case. ................................................. 20

SUMMARY OF THE ARGUMENT ...................................................... 22

STANDARD OF REVIEW ..................................................................... 28

ARGUMENT .......................................................................................... 28

    I. District Court Erred in Dismissing All Claims Related to Pinto's Unauthorized and Undisclosed Withdrawals of Funds from Bank Accounts. ................................................................................................ 28

        A.  The District Court's Holding.......................................................... 28

        B.  The District Court Erred in Not Disregarding Pinto's and Joanne's Declarations. ................................................................................................ 29

        C.  The District Court Erred in Refusing to Draw Adverse Inferences from Defendants' Failure to Produce Any Documentary Evidence in Support of Alleged "Returns of Assets". ................................................. 33

        D.  The District Court Erred in Not Treating Evidence As a Whole. ...... 34

        E.  The District Court Erred in Not Drawing All Justifiable Inferences in Favor of Nonmovant-Plaintiff. ................................................................. 37

        F.  The District Court Erred in Dismissing Nonfraud-Based Claims and in Failing to Distinguish Them from Fraud-Based Claims.................... 38

G.  The District Court Erred in Concluding that Defendants Produced Admissible Evidence of Pinto's Disposition of the Disputed Funds. ......41

II.  District Court Erred in Dismissing All Claims Related to Pinto's Theft of Joanne's SSDI Benefits. .................................................................44

III.  District Erred in Dismissing Claims Related to False Expense Reports, Inflated Bills, Double-Billing ........................................................47

IV.  The District Court Erred in Dismissing Claims Related to Pinto's Fraudulent and Inflated Charges for Services not Provided.........................54

A.  Services – April 12-22, 2013 ............................................54

B.  Services – Weekly Visit Duration and Frequency ...........................57

V.  District Court Erred in Relying on Inadmissible Declaration of Joanne. 61

CONCLUSION ...........................................................................63

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)....................................................9

Agosto v. INS, 436 U.S. 748 (1978)......................................................................50

*American Nat. Bank & Trust of New Jersey v. Alba*, 489 N.Y.S.2d 285 (1985)4, 34, 49, 53

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................... passim

Ausch v St. Paul Fire & Mar. Ins. Co., 125 A.D.2d 43 (1987) ...............................4

*Borman v. Henry Phipps Estates*, 260 App. Div. 657)...........................................33

*Carney v. Home Lines, Inc.*, 1985 WL 2242 (S.D.N.Y. Aug. 1, 1985).............. 5, 49

*Case v. New York Central R. Co*., 329 F.2d 936 (2d Cir. 1964) .................... passim

*Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690 (1962) ....26, 36, 37

*Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230 (2d Cir. 2006)................. 51, 52

*Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54 (2d Cir. 1987) ..............................................................................................................55

*Felice v. Long Island R. Co*., 426 F.2d 192 (2d Cir. 1970) ............................ passim

*Gruntz v. Deepdale General Hosp*., 558 N.Y.S.2d 623 (1990).................... 4, 34, 49

*Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000)............................ passim

*In Re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002) ....................................................................................................................35

*In re Krewer*, 658 N.Y.S.2d 256 (1996) ........................................................... 4, 49

Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129 (2d Cir.2009) .................... 26, 38, 46

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010)............................... passim

Lenzi v. Systemax, Inc., 944 F.3d 97 (2d Cir. 2019)...............................................28

*Matarese v. Moore-McCormack Lines*, 158 F.2d 631 (2d Cir. 1946)............. passim

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....54

*Messina v. Scanlon*, 15 A.F.T.R.2d 944 (E.D.N.Y. 1965) .................. 25, 34, 46, 59

*Milio v. Railway Motor Trucking Co*., 257 App. Div. 640.....................................33

Noce v. Kaufman,  161 N.Y.S.2d 1 (1957) ....................................................... 4, 49

*Pacific-Atlantic S. S. Co. v. United States*, 175 F.2d 632 (4th Cir.), *cert. denied*,

      338 U.S. 868 (1949)............................................................................... 5, 49

*Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206 (2d Cir. 2004)........... 3, 30, 31, 33

*Perlman v. Shanck*, 192 App. Div. 179 ...................................................................33

Pollar v. Columbia Broadcasting Sys., Inc., 368 U.S. 464 (1962) ...........................9

*Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980) ........26

*Ramseur v. Chase Manhattan Bank*, 865 F.2d 460 (2d Cir. 1989) .........................55

*Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000)............. passim

*Reeves*, 530 U.S. at 151 .........................................................................................27

*Rogoz v. City of Hartford*, 796 F.3d 236 (2d Cir. 2015)................................... 24, 29

*Sawyer v. Dreis & Krump Manufacturing Co.*, 67 N.Y.2d 328 (N.Y. 1986)..... 4, 49

*Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 370 F. Supp. 581

      (E.D.N.Y. 1973), *aff'd,* 518 F.2d 751 (2d Cir. 1975) .............................. 5, 49

Turner Press v. Gould,  429 N.Y.S.2d 239 (1980) ........................................... 4, 49

United States Fire Ins. Co. v Commodore Mfg. Corp., 108 A.D.2d 621 (1985). .....4

*United States v. Gleason*, 616 F.2d 2 (2d Cir. 1979)................................... 6, 51, 58

United States v. Klein, 913 F.3d 73 (2d Cir. 2019) ......................................... passim

**Rules**

Fed.R.Civ.P. 56(e)............................................................................... passim

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Plaintiffs are residents of Illinois (Bernard Black) and Maryland (Samuel Black).  Defendant Esaun Pinto is a resident of New York; Defendant CPI Investigations is a New York corporation; Defendant Cherie Wrigley is a resident of California.  This action involves a matter in controversy that exceeds $75,000, exclusive of interest and costs.

Plaintiffs-Appellants' notice of appeal was timely filed on October 12, 2021.  Jurisdiction in this Court is based on 28 U.S.C. § 1291 as an appeal from the final judgment and order granting Defendants-Appellees' motion for summary judgment, which was entered on September 22, 2021.

## PRELIMINARY STATEMENT

Defendant Esaun Pinto, a convicted federal criminal, misappropriated hundreds of thousands of dollars through: (1) making unauthorized and undisclosed withdrawals from bank accounts of a mentally ill woman, Joanne Black; (2) re-routing to himself, without authorization and disclosure, Joanne's Social Security Disability benefits, while Joanne was involuntarily committed to a psychiatric hospital; (3) submitting numerous fraudulent bills and expense reports.

Plaintiffs proffered voluminous documentary evidence, including documents from financial institutions, showing Pinto's undisclosed and unauthorized transfers of assets to himself. **Defendants have not produced a single bank or credit card statement, check, receipt, or any third-party-generated document to support the legitimacy of Pinto's actions.** Defendants simply said, without any documentary evidence, that Pinto did not keep the money he secretly funneled to himself, but instead, transferred it, in unspecified times, through unspecified channels, in unspecified amounts, without any paper trail at all, to Joanne, who was at that time involuntarily hospitalized in an acute psychiatric crisis.

Defendants' only evidence that they "did not keep" stolen assets (aside from their own statements) is a declaration signed by the mentally ill Joanne Black. Joanne is profoundly incapacitated, having spent most of her life in mental

hospitals, homeless, or in assisted living. Her declaration, obviously drafted by Defendants' counsel, is inadmissible for many reasons, and, even if admissible, is not credible. In it, Joanne purports to testify on matters on which she had no personal knowledge, and about the events that occurred while she was legally incapacitated.

The District Court found that Plaintiffs produced undisputed evidence that Pinto withdrew assets from Joanne's bank accounts and re-routed SSDI benefits to himself, all without disclosure and authorization. It found that Defendants produced no documents showing what Pinto subsequently did with that money. But the District Court held that Pinto *said* he did not keep the money, and Joanne said, with no firsthand knowledge, that *she thought* Pinto did not keep the money, and Plaintiffs had no direct evidence that he kept it. On this basis, District Court granted summary judgment for Defendants.

This is an error. First, on summary judgment, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151 (2000). The jury is not required to believe Pinto's fantastical claims that he "did not keep" the money, when he (a) withdrew the money without authorization; (b) concealed it until caught; (c) produced no paper trail showing how he "returned" the money, with no explanations; and (d) gave no specific details as to the amounts, timing,

2

and channels of alleged "returns". The jury is not required to believe Joanne's statements, given her lifelong mental incapacity, and given that the core of her declaration covers the matters she couldn't personally know, such as what Pinto did outside the hospital while she was in it. When Pinto's and Joanne's statements are properly disregarded, as they must be per *Reeves*, there is no basis for summary judgment.

Second, Pinto's and Joanne's declarations must be disregarded as conclusory. "A genuine issue [is not] created merely by the presentation of assertions that are conclusory…  Affidavits must set forth *specific facts* showing that there is a genuine issue for trial." *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir. 2004) (internal citations omitted; emphasis in the original). Pinto's puny three-substantive-paragraph declaration is entirely conclusory, containing no specific facts. Joanne's declaration is also conclusory, and worse: it is inadmissible hearsay, since Joanne has no firsthand knowledge on much of its substance. Further, Joanne lacks mental capacity to testify on financial matters, and about the events that happened during her legally established psychiatric incapacitation.

Third, the District Court repeatedly stated that it draws no inferences from Defendants' failure to turn over any third-party-generated documents to support their claims, even though such documents would have definitively proven

3

Defendants' case, and Defendants' failure to produce them is entirely unexplained. *Black v. Wrigley*, No. 16-CV-430 (CBA), 2021 WL 4932129 (E.D.N.Y. Sept. 21, 2021), [hereinafter, *Wrigley*], at *6, *8, *13. This is erroneous:

> The fact-finder should draw "*the strongest inferences* that the opposing evidence will permit… against [the party who controls evidence that would be likely to support his version of the case, and withholds it]".

*American Nat. Bank & Trust of New Jersey v. Alba*, 489 N.Y.S.2d 285, 288 (1985) (emphasis added). See also *Noce v. Kaufman,* 161 N.Y.S.2d 1 (1957); *Turner Press v. Gould*, 429 N.Y.S.2d 239, 240 (1980). The defendant's failure to turn over evidence under his control reduces the plaintiff's burden of persuasion and the level of proof. *Sawyer v. Dreis & Krump Manufacturing Co.*, 67 N.Y.2d 328, 334 (N.Y. 1986), *In re Krewer*, 658 N.Y.S.2d 256 (1996); *Gruntz v. Deepdale General Hosp.*, 558 N.Y.S.2d 623 (1990); *Ausch v St. Paul Fire & Mar. Ins. Co.*, 125 A.D.2d 43, 48 (1987); U*nited States Fire Ins. Co. v Commodore Mfg. Corp.*, 108 A.D.2d 621, 622 (1985).

> [U]nexplained failure by a [party to turn over evidence in its control] would give rise to an inference against it.

*Felice v. Long Island R. Co*., 426 F.2d 192, 194–95 (2d Cir. 1970).

See also *Case v. New York Central R. Co*., 329 F.2d 936 (2d Cir. 1964); *Matarese v. Moore-McCormack Lines*, 158 F.2d 631, 637 (2d Cir. 1946); *Pacific-Atlantic S.*

4

*S. Co. v. United States*, 175 F.2d 632, 636 (4th Cir.), *cert. denied*, 338 U.S. 868 (1949); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 370 F. Supp. 581, 585 (E.D.N.Y. 1973), *aff'd,* 518 F.2d 751 (2d Cir. 1975); *Carney v. Home Lines, Inc.*, 1985 WL 2242, at *4 (S.D.N.Y. Aug. 1, 1985).

Once the court draws the requisite "strongest inferences" against Defendants from their unexplained failure to turn over any documentary evidence, summary judgment becomes inappropriate.

Forth, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Howley v. Town of Stratford,* 217 F.3d 141, 151 (2d Cir. 2000). District Court improperly considered evidence for each of Plaintiff's claims piecemeal, failing to draw reasonable inferences from consistent patterns of Pinto's misconduct.

Fifth, District Court used incorrect standard on summary judgment: it fully credited movants-Defendants' fantastical, undocumented, conclusory statements, devoid of any specific facts, but refused to make reasonable inferences from Plaintiffs' voluminous documentary evidence. But "all justifiable inferences are to be drawn in … favor [of nonmovants]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986). "Where either of the two results… is fairly possible, [we] must let the jury decide the matter." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019).

The "fairly possible" determination on summary judgment, as is during trial, must involve not formalistic counting of facts, but the use of "common sense, common experience and common good judgment in drawing inferences from facts." *United States v. Gleason*, 616 F.2d 2, 14 (2d Cir. 1979) (internal citations omitted).

It is "common sense" and "common experience" to infer that the man who (a) secretly funneled money of a mentally ill woman to himself, and (b) when caught, failed to produce any documents as to his asset disposition, and (c) failed to provide any explanation for the absence of the paper trail, and (d) failed to give any specific facts as to how he disposed those assets – it is at least "fairly possible" that this man is lying when he claims he "did not keep" that money.

Similarly, District Court applied incorrect standard when it dismissed all claims related to Pinto's fraudulent billing. The court reasoned that, among many possible interpretations of Pinto's bills, there was one that was favorable to Defendants and "plausible". *Wrigley* at *7. But "plausible" is not the standard on summary judgment. If Defendants' interpretation is merely "plausible", then, it is at least "fairly possible" that Plaintiff's version is correct. "[A]ll justifiable

6

inferences are to be drawn in … favor [of nonmovants]." *Liberty Lobby,* 477 U.S. at 255. Thus, summary judgment must be denied.

Likewise, the District Court dismissed nonfraud-based claims related to Pinto's theft of bank assets by holding that Plaintiffs "do not convincingly argue that Pinto's statements … are misrepresentations of present fact, rather than a promise of future conduct." *Wrigley* at *12. But on summary judgment, nonmovants-Plaintiffs do not need to "convincingly argue" that their interpretation of conflicting evidence is superior; they only need to show it is "fairly possible".

Sixth, District Court's holdings across all fraud-based claims devolve into a demand that Plaintiffs prove their case with "clear and convincing evidence" on summary judgment, with District Court being the arbiter of whether the evidence is sufficiently clear and convincing:

> Although Pinto's failure to document his expenses is perhaps troubling, it is not clear and convincing evidence that he never in fact incurred those expenses. Nor is Plaintiffs' unsupported assertion that "truthful expenses do not come all in round numbers" sufficient evidence from which a reasonable jury could find that Pinto 's representations are false.

*Wirgley* at *6.

This contradicts a long line of the Supreme Court precedents:

> Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Liberty Lobby,* 477 U.S. at 255.

The District Court is not permitted to take movant-Pinto's undocumented, implausible statements as true, or even to weigh in conflicting evidence to determine whether they are true. The District Court must draw "all justifiable inferences" in favor of Plaintiffs, *Id*. It is "justifiable" to infer that Pinto's fact-free, undocumented proclamations that he did not keep the stolen money are false, and his undocumented, all-round-number expenses are fraudulent.

More broadly, if this Court accepts the District Court's holding, it will make it nearly impossible for victims to ever recover stolen assets. In many theft cases, the victim can only prove that the thief removed assets without authorization, but cannot prove what the thief did with those assets afterwards, especially if the thief refuses to turn over any documents related to subsequent asset dispositions, as Defendants are doing here. Any thief, after being caught, can claim that he returned stolen assets, without paper trail, and refuse to give any specifics. This is what Pinto did here.

Granting summary judgment in such cases would encourage not only theft, but also perjury. It would contradict every US Supreme Court precedent on

8

standards for summary judgment: *Liberty Lobby, Reeves, Pollar v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962), *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159 (1970).

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in refusing to disregard, for summary judgment, Defendant's declaration and deposition testimony, where:

    a.  the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and

    b.  Defendant's claims are facially implausible, such as the claim that he first withdrew assets from banks without authorization, concealed it until caught, and now claims that he, in secrecy, "returned" the money to a mentally ill woman, while she was involuntarily committed to a psychiatric hospital, and

    c.  Defendants' claims of "asset returns" are not supported by any documentary evidence.

2.  .Whether the District Court erred in not disregarding a witness' declaration, where:

    a.  the declarant purports to testify that she evaluated and approved voluminous, complex financial documents, but she has no capacity

to comprehend financial matters due to a lifelong, legally established mental disability;

b. during the time covered in the declaration, the declarant was involuntarily committed to a psychiatric hospital and, separately, was adjudicated to be mentally incapacitated, and

c. the declarant purports to testify to matters on which she cannot have firsthand knowledge, such as what Defendants did outside mental hospital while she was involuntarily committed inside, and

d. the declaration is conclusory, contains no specific facts: it summarily claims that Defendants returned to her *all* disputed money, but gives no specifics: dates of returns; channels; the value of each tranche of returns; how the declarant estimated that value; where those assets are now, and

e. the declaration is self-contradictory: the declarant testifies that she did not take medication and was deeply incapacitated, and yet, purports to testify to the events that happened during that period, and

f. Defendants produced any no documents supporting the declarant's recollection of "returned assets", or explaining why paper trail does not exist.

3. Whether the District Court erred in refusing to interpret against Defenders-movers the failure of Defendants to produce any third-party-generated documents to support their implausible claims, where:

    a. Per well-established Second Circuit and New York state law, the fact-finder should draw "the strongest inferences that the opposing evidence will permit" against the party who has the sole access to evidence and withholds it, and the defendant's failure to turn over evidence under his control reduces the plaintiff's burden of persuasion and the level of proof, and

    b. Defendants were the only parties with access to such documents; and

    c. Such documents would have definitively proven Defendants' case, and

    d. Such documents would have been easily available to Defendants if Defendants' claims were true, and

    e. Defendants failed to explain why they had no such documents on any of the claims.

4. Whether District Court erred in reviewing each piece of Plaintiffs' evidence in isolation, piecemeal, instead of viewing all evidence as a whole, where Plaintiffs produced voluminous documentary evidence

11

showing that Defendants engaged in similar misconduct across multiple claims.

5.  Whether District Court applied incorrect summary judgment standard when:

    a.  the District Court must draw all justifiable inferences in favor of nonmovants-Plaintiffs, and

    b.  the District Court interpreted conflicting evidence against nonmovants-Plaintiffs, concluding, e.g., that it was "plausible" that Defendants' interpretation of contested evidence was correct, and

    c.  in all cases of conflicting evidence, Plaintiffs' interpretation was at least "fairly possible".

6.  Whether District Court erred in not striking the declaration of Joanne Black as inadmissible, or disregarding it for summary judgment, when:

    a.  During the time covered in the declaration, the declarant was adjudicated legally incompetent and, separately, in a different state and through a different procedure, was involuntarily committed to a psychiatric hospital, and

    b.  The declaration contains numerous statements about the facts on which the declarant could not have firsthand knowledge;

  c. The declaration on its face shows that the declarant has poor

   memory and little comprehension of the events that occurred

   during the period covered in the declaration;

  d. The declaration contained no specific facts (no dates, amounts,

   places, no details), only vague conclusory statements, opinions,

   and speculations;

  e. The declarant is not competent to testify to any financial or record-

   keeping matters due to her livelong, severe mental disability.

7. Whether District Court erred in applying the same standard of proof –

  clear and convincing evidence – to all of Plaintiffs' claims related to

  Defendants' theft of funds from bank accounts and SSDI, including the

  claims of conversion, unjust enrichment, money had and received, and

  negligent misrepresentation, which require preponderance of evidence.

## STATEMENT OF THE CASE

  Plaintiffs brought this action to challenge Defendants undisclosed,

unauthorized, undocumented asset transfers, and inflated expense reports and bills,

to recover funds that Defendants wrongfully appropriated, and other relief. On

February 25, 2021, Plaintiffs sought permission to file a motion to strike the

declaration of Joanne Black as inadmissible, as is required by the District Court's

rules. A-302. The District Court declined to accept the motion (minute entry, March 5, 2021). On Sept. 9, 2021, it granted Defendants motion for summary judgment. *Black v. Wrigley*, No. 16-CV-430 (CBA), 2021 WL 4932129 (E.D.N.Y. Sept. 21, 2021) [hereinafter, *Wrigley*]. The District Court entered judgment for Defendants on Sept. 22, 2021. Plaintiffs-Appellants timely appealed.

## FACTUAL BACKGROUND

### A.  Pinto's Long History of Using Joanne Black's Mental Illness to Steal from Her.

Defendant Pinto is a convicted federal criminal, specializing in fraud. His 2007 criminal indictment listed numerous felonies: fraud, aggravated identity theft, fraudulent solicitation of private information from government agencies, and conspiracy, carrying up to 10 years of imprisonment. A-249. Pinto pleaded guilty to a felony statute, misdemeanor section. A-243.

Joanne Black is an elderly schizophrenic woman whose lifelong, severe mental illness is undisputed. Joanne never lived independently, and spent most of her life in mental hospitals, in assisted living, or homeless. Comp. ¶1. Her entire life, Joanne lacked capacity to understand money. A-245, A-286. Joanne cannot "understand the value and difference between $20 and $20,000 or two million dollars". *Id.*

14

Plaintiffs are Joanne's brother, Bernard, and nephew, Samuel. Defendant Wrigley is Joanne's and Bernard's cousin, and a long-term associate of Pinto.

Pinto met Joanne in 1998, when Joanne, in a state of delusion, sought a private investigator. Among Joanne's known delusions are, e.g., that Joanne is married to a billionaire mob lawyer who is kidnapped for ransom; that her brother murdered her father, etc. Comp. ¶67-68.

In September 2014, Pinto testified during Joanne's guardianship proceedings in the New York Supreme Court for Richmond County. Pinto testified that when he met Joanne in 1998, he immediately knew she was mentally ill; and yet for years, he charged her for his unspecified "PI services". In 2001, Joanne had an acute psychotic episode, ran away, became homeless, and stopped paying for Pinto's "services". Pinto testified that in response, Pinto and two of his associates followed her across the state of NY, without informing Joanne about their pursuit, and without obtaining permission from Joanne's family for doing so. At that time, Pinto's ability to swindle from Joanne was limited only by the fact that Joanne's money was tightly controlled by her mother. Comp. ¶¶2-15.

## B. Defendants' Theft of Funds from Chase and Wells Fargo Bank Accounts

In 2012, Joanne's mother died, leaving Joanne a sizable inheritance. Comp. ¶¶5-6. Joanne at that time was "fragrantly delusional and very paranoid." A-295.

Joanne's and Bernard's cousin, Defendant Wrigley, was at that time estranged from Plaintiffs' family because Wrigley had misappropriated significant assets earlier, Comp. ¶10, and was disinherited for it. Comp. ¶41. Wrigley used the death of Bernard's and Joanne's mother, and the distress that it caused, to gain Plaintiffs' trust. Plaintiffs agreed to involve Wrigley in taking care of Joanne, who had been homeless at that time. Comp. ¶¶8, 13.

Wrigley and Pinto conspired to transfer Joanne's assets to themselves. Comp. ¶¶21-22, 112. Wrigley used her special family relationship with Plaintiffs, and their distress over the death of the mother, to convince Plaintiffs to trust Pinto. With Wrigley's vouching, Pinto gained access to Joanne's bank cards, and secretly withdrew thousands of dollars, without disclosure or authorization. Comp. ¶¶164-66.

In 2013-14, Pinto made about 250 discrete withdrawals from Joanne's two bank accounts, all without paper trail as to the subsequent use of funds, and most without disclosure, authorization, or approval. Comp. ¶¶167-418. From April 15, 2013. through September 29, 2014, Pinto withdrew $52,003 from Joanne's Chase bank account. Comp. ¶324. He reported taking only $22,600, and concealed the rest. Comp. ¶¶413-24. He never produced any documents as to where any of the money went.

16

Between May 2, 2013 and May 5, 2014, Pinto withdrew $14,373.68 from Joanne's account in Wells Fargo bank. Comp. ¶425. He did not report any of these withdrawals, nor obtained authorization. *Id*. He produced no documents for where the money went.

In sum, Pinto did not report and misappropriated $43,776.87 from bank accounts alone. Comp. ¶425.

Wrigley knew about Pinto's misappropriation, and conspired with him to lie to Plaintiffs cover it up. Comp. ¶¶167, 427-440. Wrigley repeatedly vouched for Pinto's honesty. A-246, A-119. Plaintiffs trusted Wrigley due to their family relationship, and therefore trusted Pinto. If Wrigley did not vouch for Pinto, Plaintiffs would have investigated Pinto much earlier and prevented him from diverting assets to himself. A-246.

## C.  Defendants' Theft of Joanne's SSDI Benefits

For years, Joanne has been receiving monthly payments from the SSDI, due to her lifelong mental disability. During 2013-14, these funds were managed by her legal conservator, Bernard Black, who placed them to Joanne's Wells Fargo bank accounts. In April of 2014, Pinto re-routed Joanne's SSDI payments to himself. Compl. ¶¶443-47. Pinto did not obtain authorization for the re-routing from the

17

court, from Joanne's counsel, or Joanne's legal guardian, and never disclosed the re-routing to them. Compl. ¶¶443-47. Wrigley knew about these actions and helped Pinto. Compl. ¶¶448-50. Between May 2014 through January 2015, Pinto had diverted $10,975.00 of Joanne's SSDI benefits. Compl. ¶¶452-53.

The SSA rules require Pinto, as a representative payee, to: (1) place SSDI funds in a separate bank account titled with Joanne Black as beneficiary, (2) keep records of his receipt and use of these funds, (3) report to the SSA on his use of these funds, and (4) return to the SSA any funds he held when he ceased to become representative payee. A-244. Pinto did none of this. Pinto denied having any records of his actions as representative payee. A-248.1-A-248.8, response 12.

Defendants did not produce any documents showing where the SSDI money ultimately disappeared.

## D. Fraudulent and Inflated Charges for Services not Provided

During Joanne's hospitalization in 2013 and 2014, Pinto told Plaintiffs that he visited her at least three times a week for five hours per visit. During 2013, he charged $796.33 per visit. Compl. ¶457. From January 2014, Plaintiffs paid Pinto a flat fee, $8,000 a month, for visiting Joanne at least three times a week. Compl. ¶460. Wrigley was charged with ensuring that Pinto performs as promised. Compl. ¶460-

61. Pinto lied about his visits: per hospital visitor logs, between May and October 2014, he visited Joanne only 1.2 times a week. Compl. ¶462. The hospital did not keep records for the period before May 2014. Pinto provided no documentary evidence for the frequency or duration of his visits.

Based on Pinto misstated the frequency of his visits, from January through August 2014, when he was billing a flat rate of $8,000/month, he overcharged for $38,400. Between June 3 and December 31, 2013, when Pinto billed per-hour, he overcharged for $43,000. Pinto also overcharged for the duration of his visits. Compl. ¶473-77. The total estimated overcharge by Pinto for visits to Joanne that he did not make during 2013 and 2014 is $81,400. Compl. ¶479.

## E.  False Expense Reports, Inflated Bills, Double-Billing.

Pinto submitted numerous fraudulent bills, often false on their face. Pinto billed Joanne for his own services, at $150/hour, for April 12, 2013, through April 19, 2013, for a total of 153 consecutive hours at $22,950. Compl. ¶489. Pinto billed $50/hour for his employee, a single driver (not two drivers working alternate shifts), working 33 consecutive hours, and for a single bodyguard, working 24-hour shifts for a week, for 168 hours a week. Compl. ¶¶489-490, 505. Pinto submitted numerous similar bills, where he represented that he, or his employees, worked 24-hour shifts, or 168 hours a week. Compl. ¶505.

19

In addition, Pinto, together with Wrigley, double-billed Plaintiffs $96,000 for this 16-month period. Compl. ¶487. Pinto submitted numerous expense reports for reimbursement, virtually all are in round numbers, grossly above normal costs, and false on their face. Compl. ¶491-94. Pinto never produced any documents to support his expenses.

## F. Pinto and Wrigley Repeatedly Lied Under Oath to Cover Up Pinto's Theft of Assets that Gave Rise to This Case.

Plaintiffs discovered Pinto's unauthorized asset transfers and fraudulent billing and alerted two courts: the Denver Probate Court and the New York Supreme Court for Richmond County. Compl. ¶ 573. In response, on September 22, 2015, Wrigley submitted a sworn declaration, where she made numerous false statements. Wrigley denied that Pinto had ever been accused of any improper conduct in his work for Joanne, and "there is no assertion that Mr. Pinto has done anything improper in connection with [Joanne] whatsoever." Compl. ¶ 574. This was false: in January 2015, Bernard had submitted documents to the Denver Probate Court, detailing Pinto's theft of tens of thousands of dollars of Joanne's money. On April 2, 2015, the Colorado court ordered an investigation into Pinto's conduct. Compl. ¶ 575.

Wrigley swore, "these events [related to Pinto's criminal conviction] transpired twenty (20) years ago." Compl. ¶ 579. In reality, Pinto entered his guilty plea less than seven years before Wrigley's testimony. Compl. ¶ 580.

Wrigley swore that "the felony charge against Mr. Pinto, to which Petitioner refers, was dropped and he has never been convicted of a felony." Compl. ¶ 576. This is misleading: it creates an impression that Pinto has no federal criminal convictions. In reality, Pinto pleaded guilty to 18 U.S.C. §§ 641 and 2, a section that carries either a felony or misdemeanor sentence, depending on the amount stolen, up to ten years of imprisonment.

Pinto also committed multiple perjuries in the same proceedings in the NY Supreme Court for the Richmond County. In his sworn testimony, Pinto claimed that "I was charged with possession of the document." Compl. ¶ 582. In reality, Pinto was charged with: aggravated identity theft, fraudulent elicitation of Social Security Administration information, solicitation of federal tax information, conspiracy, and wire fraud. Compl. ¶ 49. Pinto's statement also implies that Pinto was convicted of the "possession of the document." False: Pinto was convicted of theft of government records, a felony section, carrying up to 10 years in prison. Compl. ¶ 585.

Pinto falsely testified that all he did was to receive one document via fax from an unscrupulous source. Compl. ¶ 586. False: per Pinto's Government

Sentencing Memorandum, Pinto admitted to knowing that he was buying illegally

obtained government records; paying for the receipt of illegally obtained records;

knowingly using illegally obtained information for the benefit of his clients, and

receiving compensation in return. Compl. ¶ 587. Further, contrary to Pinto's

testimony, Pinto did not merely obtain a single document; per Government

Sentencing Memorandum, "Mr. Pinto engaged BNT Investigations to obtain a

variety of financial information, not simply tax information, on approximately 53

individuals." Compl. ¶ 588.

Pinto testified that his participation in the conspiracy was so small that he

did not even have to pay a fine. Compl. ¶ 591. False: Pinto did not pay a fine

because he was found indigent, not because his participation was small. Compl. ¶

592. Pinto falsely testified that his conviction was caused by the fact that his boss

had just lost his son, was unable to run the office, causing Pinto to run the office,

and Pinto made mistakes. Compl. ¶ 593. False: Pinto's boss lost his son suddenly

on May 9, 2007, but Pinto's illegal actions occurred between September 2006 and

April 2007. Compl. ¶ 593.

## SUMMARY OF THE ARGUMENT

Plaintiffs produced voluminous documentary evidence, showing that Pinto,

without authorization or disclosure, made hundreds of withdrawals from Joanne's

bank accounts, and concealed it until caught. Pinto, also without authorization and

22

disclosure, re-routed to himself Joanne's SSDI benefits. Wrigley knew this and actively assisted Pinto.

Defendants' sole response was that Pinto did not keep the money he secretly diverted to himself; instead, Pinto, also secretly, transferred that money back to Joanne, while Joanne was involuntarily committed to a psychiatric hospital, unable to comprehend reality, and with no need for cash. Defendants did not produce a single document to support their "return of assets" story, even though such documents would have been easily available if assets were in fact returned: bank and credit card statements, receipts, third-party bills, cancelled checks, etc. Even Pinto's self-serving declaration or his deposition testimony contained no specific facts for alleged "asset returns": when, where, through which channels, how much was returned.

Defendants' only evidence of alleged "asset returns" was: (1) Pinto's own statements, and (2) an inadmissible declaration, signed by Joanne, where she purported to testify to the events that occurred during the time of her acute psychiatric collapse, and on matters on which she had no personal knowledge, such as what Pinto did outside the hospital while she was in it. Pinto's and Joanne's declarations did not contain any specific facts, only vague and conclusory statements. Joanne's declaration was also self-contradictory: she acknowledged that during part of the relevant time, she was not taking medication and was deeply

23

incapacitated, and yet, purported to testify to knowing how many hours Pinto worked during that time.

The District Court held that Pinto *said* (without documentary support) he did not keep the money, and Joanne said *she thinks* (without firsthand knowledge) that Pinto did not keep the money, but Plaintiffs had no direct evidence that he did, and granted summary judgment for Defendants.

There are several errors in this holding.

First, on summary judgment, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151; see also *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). The jury is not required to believe that Pinto, who conceded that he diverted significant funds to himself without authorization and disclosure, is telling the truth about his subsequent disposition of those assets, entirely undocumented. Nor is the jury required to believe that Pinto's 168-hour work weeks were real.

Likewise, "the jury is not required to believe" Joanne's declaration, which claims that Joanne comprehended and evaluated the accuracy of financial documents, even though Joanne has a lifelong mental disability, and Wrigley herself testified that Joanne cannot tell the difference between $20, $20,000, and

$2,000,000. Wrigley letter, A-285, at A-287. Even for matters not involving money, the jury is not required to believe Joanne's declaration, because it refers to events on which Joanne had no firsthand knowledge, and which occurred during Joanne's acute psychiatric crisis, such as where Pinto stored SSDI funds he illegally re-routed to himself.

Second, the District Court erred in not disregarding Pinto's and Joanne's declarations, even though these declarations contained no specific facts, and made only vague conclusory statements, failing to satisfy the requirements of Fed.R.Civ.P. 56(e).

Third, the District Court erred in refusing to draw negative inferences from Defendants' failure to turn over any documents to support their assertions, and from Defendants' inability to explain the complete lack of paper trail across all claims. "[W]here an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits." *Messina v. Scanlon*, 15 A.F.T.R.2d 944, 949 (E.D.N.Y. 1965). See also *Felice,* 426 F.2d at 194–95; *Case*, 329 F.2d 936; *Matarese* 158 F.2d 637.

Forth, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be

25

entitled to view the evidence as a whole." *Howley,* 217 F.3d at 151. See also

*Kaytor*, 609 F.3d at 545. The District Court reviewed evidence piecemeal, never

drawing inferences from the consistent pattern of Pinto's misconduct: for all claims

in this case, Pinto (a) failed to keep any paper documentation; failed to provide full

disclosure; failed to testify to specific facts to explain his conduct. For most claims,

Pinto also failed to obtain authorization for asset transfers.

Fifth, on summary judgment, the court must draw all reasonable inferences

in favor of the nonmoving party, even when contrary inferences might reasonably

be drawn. *Reeves,* 530 U.S. at 150; *Continental Ore Co. v. Union Carbide &*

*Carbon Corp.,* 370 U.S. 690, 696 (1962). "Summary judgment is inappropriate

when the admissible materials in the record 'make it arguable'" that the claim has

merit, *Jasco Tools, Inc. v. Dana Corp.,* 574 F.3d 129, 151 (2d Cir.2009)

(quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d

Cir.1980). See also *Kaytor*, 609 F.3d at 545–46.

But the District Court did the opposite. It accepted Defendants'

undocumented, facially implausible, at least partially inadmissible declarations,

instead of disregarding them, as is required by *Reeves,* 530 U.S. at 150. It refused

to make reasonable, common-sense inferences in Plaintiffs' favor, like the

inference against Defendants from Defendants' failure to turn over documents in

their control. It weighed messy evidence and drew inferences against Plaintiffs, even when the evidence could easily support Plaintiffs' side.

Sixth, District Court erroneously relied on Joanne's declaration, refusing to strike it, despite Plaintiffs' request to do so. On summary judgment, the court may not use inadmissible evidence. Joanne purported to testify to events for which she had no firsthand knowledge, such as whether Pinto ever took her money for his benefit; what Pinto did outside her hospital while she was inside; how many hours Pinto worked when Joanne was in complete psychiatric breakdown, or when Joanne was not present; which undocumented expenses Pinto incurred in her absence; whether Pinto ever took any of her money for himself . Her declaration is also inadmissible because it contains no specific facts,

Even if Joanne's declaration is not stricken, on summary judgment, it has to be disregarded in its entirety, because "the jury is not required to believe" undocumented recollections of a woman with severe mental illness about the events that happened during her acute psychiatric breakdown and involuntary hospitalization, on matters that she could not personally observe. *Reeves*, 530 U.S. at 151. Once Joanne's declaration is properly disregarded and/or stricken, summary judgment becomes clearly improper.

## STANDARD OF REVIEW

This Court reviews district court decisions granting summary judgment *de novo*. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

## ARGUMENT

### I. District Court Erred in Dismissing All Claims Related to Pinto's Unauthorized and Undisclosed Withdrawals of Funds from Bank Accounts.

#### A. *The District Court's Holding.*

Plaintiffs brought voluminous evidence, and Defendants conceded that (a) Pinto made *hundreds* of withdrawals from bank accounts without authorization and disclosure, and (b) Pinto concealed these withdrawals until he was caught by Plaintiffs through forensic accounting. Plaintiffs brought claims for fraud (second cause of action), fraudulent misrepresentation (third cause of action), money had and received (seventh), and negligent misrepresentation (fourteenth) based on these withdrawals.

Defendants' sole response was that Pinto did not retain the money he secretly withdrew, but returned it to Joanne, who was at the time of his alleged "asset returns" involuntarily committed to a psychiatric hospital. Defendants produced no documents for any alleged "asset returns": no receipts, no bank or credit card statements, no checks, no third-party bills. Even Pinto's self-serving

declaration contained no details that would allow forensic investigation: how much he transferred, though which channels, for which purposes, and when. Nothing.

Still, District Court grated summary judgment for Defendants because Pinto *said* he did not keep the money, and Plaintiffs had no evidence that he did not. *Wrigley*, at *13.

### B. The District Court Erred in Not Disregarding Pinto's and Joanne's Declarations.

Defendants sole evidence that Pinto returned stolen assets is Pinto's and Joanne's declarations. On summary judgment, both must be disregarded.

First, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves* 530 U.S. at 151; see also *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

Second, on summary judgment,

> a genuine issue [is not] created merely by the presentation of assertions that are conclusory. *See, e.g., Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738, at 346–56 (3d ed.1998). Affidavits "must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added).

*Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206 (2d Cir. 2004)

Pinto's entire declaration (aside from two pro forma paragraphs) is below:

29

2. I have reviewed all my invoices with respect to the services I provided for Joanne Black from April 2013 to September 2014. My invoices do not contain any false representations. I incurred each and every expense listed in my invoices, and more that I did not list on the invoices.

3. Additionally, the representations in the invoices regarding the hours worked are accurate. From April 12, 2013 to June 3, 2013 I and/or my employees worked all hours of each day to secure, monitor, and care for Joanne.

4. I did not steal from Joanne or the Supplemental Needs Trust. I never retained for my personal benefit any funds from her Social Security Disability benefits, or from her bank accounts at Chase or ells Fargo.

Pinto Decl. ¶ 2-4.

Pinto's declaration must be disregarded both per *Reeves* and per *Patterson*. Per *Reeves*, "the jury is not required to believe" self-serving, vague, entirely unsupported by any documentary evidence, conclusory statements from a man who was caught after making hundreds of unauthorized and undisclosed withdrawals from bank accounts. *Reeves*, 530 U.S. at 151.

Per *Patterson*, Pinto's declaration must be disregarded because it is conclusory and lacks specific facts: "I did not steal from Joanne… I never retained for personal benefit any funds [that Pinto without authorization withdrew from bank accounts and SSDI]". This is conclusory; there are no specific facts. To satisfy *Patterson* and Fed.R.Civ.P. 56(e), Pinto's declaration had to provide *specific facts* showing how Pinto returned tens of thousands of dollars that he

30

secretly and without authorization diverted to himself: specific amounts of returned funds, times of return, channels of return, explanations for the absent paper trail, etc.

Joanne's declaration also has to be disregarded per *Reeves*, *Patterson*, Fed.R.Civ.P. 56(e), and more: not only is it not credible and not specific, but it's inadmissible because Joanne has no personal knowledge and is not competent to testify to the matters asserted in her affidavit:

> Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.

*Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004)

Joanne's declaration is full of implausible, self-contradictory claims, and has no specific facts. It asserts that, Pinto, after secretly withdrawing money from bank accounts, placed it "in a secure location that I was aware of" (Joanne Decl. ¶ 11). First, this is inadmissible: Joanne has no firsthand knowledge of whether Pinto placed anything anywhere, since he was doing it outside the hospital, and she was involuntarily committed inside. Second, this fails to satisfy Fed.R.Civ.P. 56(e), because it gives no specific facts: how much money was placed in that "secure location", when, in what type of assets (cash? gold?); what that "secure location"

31

was; where it was; how and especially *when* Joanne learned about its existence, and where the money subsequently went from it.

The rest of Joanne's declaration is similarly devoid of specific facts, stating simply that Pinto bought for her some unspecified items, without telling us which items, when they were bought, where, at what price, for what purpose. Joanne mentions that Pinto "used some of the withdrawals to reimburse himself for out-of-pocket expenses" (Joanne Decl. ¶ 11), but does not give any specifics -- when Pinto "reimburse[d] himself" (without authorization or disclosure), how much, for which prior expenses, expenses incurred when, by whom, for which purposes. Critically, Pinto was already reimbursed for all his expenses by Plaintiffs; Joanne's declaration must tell us whether Pinto was double-charging her again, by submitting the same expenses for reimbursement by both Joanne (with no paper trail or details) and Plaintiffs (with all proper paper trail and details).

Joanne's declaration attempts to support Pinto's undocumented and fantastical hourly billing (such as 168 hours a week), but fails to give any specific facts. Her declaration merely says that "I was not taking any medication at that time and was severely struggling with mental illness. [Pinto] and his employees worked tirelessly to rescue me from my circumstances, which were quite perilous at the time." (Joanne Decl. ¶ 7). How many hours they worked, how many people, performed which services, where? Nothing. This is not only devoid of facts, but is

32

self-contradictory: Joanne simultaneously concedes that she was psychiatrically incapacitated and yet somehow purports to testify to Pinto's work on her behalf.

The jury is not required to believe such statements; per *Reeves*, the court must disregard Joanne's declaration on summary judgement. Also, per *Patterson,* Joanne's declaration lacks specific facts, and therefore does not create a genuine issue of material fact, and cannot be used as a basis for summary judgment decision. *Patterson*, 375 F.3d at 219. Further, because Joanne has no personal knowledge and is not competent to testify to Pinto's actions outside the hospital while Joanne was in it, her declaration is not admissible and cannot be used on summary judgment. Fed.R.Civ.P. 56(e).

*C. The District Court Erred in Refusing to Draw Adverse Inferences from Defendants' Failure to Produce Any Documentary Evidence in Support of Alleged "Returns of Assets".*

District Court repeatedly stated that it will draw no adverse inferences from Defendants' failure to turn over any documents to support any their claims. Wrigley, at *6, *8, *13. This is erroneous:

> [I]n *Noce v. Kaufman*, 2 N.Y.2d 347 (1957) the Court declared 'that where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits. (*Perlman v. Shanck*, 192 App. Div. 179; *Milio v. Railway Motor Trucking Co*., 257 App. Div. 640; *Borman v. Henry Phipps Estates*, 260 App. Div. 657)… The cases which enunciate the principle with its variant gradations of adverse effect upon the defaulting party are legion, and citation need not be multiplied.

*Messina*, 15 A.F.T.R.2d at 949.

> [If a party in control of evidence] does not produce [such evidence], the
>
> inference arises that it would have been unfavorable.

*Felice,* 426 F.2d at 192.

See also *Case*, 329 F.2d 936; *Matarese*, 158 F.2d 637; *Pacific-Atlantic*, 175

F.2d at 636; *Silver Chrysler Plymouth*, 370 F. Supp. At 585; *Carney*, 1985 WL

2242, at *4.

Moreover, when the defendant is the sole party with access to evidence, his

failure to produce such evidence reduces the burden of persuasion and the level of

proof that the plaintiffs must meet to prove their case. See *Sawyer v. Dreis &*

*Krump Mfg. Co.,* 67 N.Y.2d 328, 334 (N.Y. 1986); *In re Krewer,* 658 N.Y.S.2d

256 (1996); *Gruntz v. Deepdale General Hosp.*,163 A.D.2d 564, 566 (1990). See

also *American Nat. Bank & Trust of New Jersey v. Alba*, 111 A.D.2d 294 (1985).

Once a court makes requisite adverse inferences from the fact that

Defendants did not produce a single piece of paper to document Pinto's alleged

"returns of assets", summary judgment becomes clearly improper.

### D.  *The District Court Erred in Not Treating Evidence As a Whole.*

"In determining the appropriateness of summary judgment, the court should

not consider the record solely in piecemeal fashion, giving credence to innocent

explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Howley,* 217 F.3d at 151. See also *Kaytor*, 609 F.3d at 545.

> [The] trap to be avoided in evaluating evidence… for purposes of ruling on the defendants' motion for summary judgment is to suppose that if no single item of evidence presented by the plaintiff points unequivocally to [the offence], the evidence as a whole cannot defeat summary judgment. It is true that zero plus zero equals zero. But evidence can be susceptible of different interpretations, only one of which supports the party sponsoring it, without being wholly devoid of probative value for that party. Otherwise what need would there ever be for a trial?

*In Re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002).

Here, District Court reviewed evidence piecemeal. Plaintiffs presented evidence that Pinto engaged in a broad, consistent scheme of transferring Joanne's money to himself: (a) through hundreds of unauthorized secret withdrawals from bank accounts, (b) through illegal re-routing of her SSDI benefits to himself, (c) through fraudulent billing for 168-hour work weeks, (d) through forged all-round-number expense reports. Pinto is also very consistent in covering up his tracks across all channels of theft: he failed to produce any paper trail for his bank-account withdrawals, and for his SSDI re-routing, and for his expenses, and for his billing, and for his alleged "secure location", where he claimed to have stored stolen money for Joanne, and for his alleged purchases of unknown items for Joanne, and for his undocumented and unreported self-reimbursements of his

alleged unspecified expenses the money he illegally withdrew from bank accounts, etc.

Pinto's patterns of misconduct across all claims are pervasive and consistent. Per *Howley* and *Kaytor*, District Court must draw reasonable inferences across claims to see these patterns. The court must draw all reasonable inferences in favor of the nonmovant, even when contrary inferences might reasonably be drawn. *Continental Ore Co.,* 370 U.S. at 696. Instead, District Court treated each claim in complete isolation from the rest, never identifying consistent patterns, not drawing inferences from evidence presented across claims. District Court disposed of each claim piecemeal, "giving credence to innocent explanations for individual strands of evidence", exactly what *Howley* held was impermissible. *Howley,* 217 F.3d at 151. When District Court discussed why it chose to credit Pinto's claims that he, without any paper trail, returned asset to Joanne, it never mentioned that Pinto also submitted undocumented and implausible expenses. When District Court discussed why it credited Pinto's facially implausible all-round-number expenses, it never mentioned Pinto's implausible, undocumented claim that he warehoused stolen money in a secure location for Joanne. When District Court discussed why it credited Pinto's implausible time logs, showing 168-hour workweeks, it never mentioned the fact that Pinto conceded to have made hundreds of illegal withdrawals of funds from bank accounts. This is an error.

36

*E. The District Court Erred in Not Drawing All Justifiable Inferences in Favor of Nonmovant-Plaintiff.*

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby,* 477 U.S. at 255. The court must draw all reasonable inferences in favor of the nonmoving party, even when contrary inferences might reasonably be drawn. *Continental Ore* 370 U.S. at 696.

The District Court erred in crediting implausible statements by Pinto and Joanne, instead of disregarding them because "the jury was not required to believe" them, *Reeves,* 530 U.S. at 150, and it erred in not crediting nonmovants-Plaintiffs' reasonable statements and inferences, contrary to *Continental Ore Co.,* 370 U.S. at 696.

The District Court erred in accepting as true Joanne's claim that Pinto kept stolen SSDI funds in a "secure location", even though Joanne could not have firsthand knowledge of this, thus failing Fed.R.Civ.P. 56(e) and *Patterson,* 375 F.3d at 219. The court did not disregard Pinto's conclusory declaration, devoid of any specific facts. The District Court held that summary judgment was proper because Joanne and Pinto said there was such "secure location", and Plaintiffs had no evidence that there wasn't, *Wrigley* at *13.

37

All reasonable inferences must be drawn in favor of nonmovants-Plaintiffs, and it is entirely reasonable to infer that Defendants' undocumented claims about mysterious, undocumented "secure location" is false. Summary judgment is impermissible when it is "arguable that [nonmovants'] claims has merit", *Jasco Tools*, 574 F.3d at 151. "Where either of the two results… is fairly possible, [we] must let the jury decide the matter." *Klein*, 913 F.3d at 78. It is at least "fairly possible" that Pinto's claims that he did not keep the stolen money are false, given that he took it in secrecy and without permission, and the paper trail disappeared once the money reached Pinto's hands. "[A]ll justifiable inferences are to be drawn in … favor [of nonmovants]." *Liberty Lobby,* 477 U.S. at 255. It is justifiable to infer, from the totality of evidence, that Defendants' claims that Pinto did not keep the money are false.

### F.  The District Court Erred in Dismissing Nonfraud-Based Claims and in Failing to Distinguish Them from Fraud-Based Claims.

The District Court reasoned that Plaintiffs had a heightened burden of proof because they brought fraud-based claims based on Pinto's withdrawals from bank accounts, and it's the heightened standard that Plaintiffs fail to meet. Wrigley at *5, *6.

But Plaintiffs brought several other claims based on Pinto's withdrawals: conversion, unjust enrichment, money had and received, and negligent

38

misrepresentation, all of which require only preponderance of evidence. The District Court never mentioned the difference in applicable standards, but then, applied what appears to be a "clear and convincing" standard, without discussion of differences, to non-fraud claims based on the same facts.

For unjust enrichment and money had and received claims based on Pinto's withdrawals from bank accounts, the District Court simply said, "As I concluded above with respect to Plaintiffs' fraud claims, Plaintiffs have not demonstrated a genuine dispute of material fact with respect to whether Pinto retained these funds." *Wrigley* at *17. This holding is erroneous for the same reason the holding on fraud-based claims is erroneous, *supra* part I.B-I.E. But there is more here: the District Court's finding for fraud claims above was based on "clear and convincing" analysis, but the unjust enrichment and money had and received claims require only preponderance. The District Court treated both sets of claims as the same for the burden purposes. Even if Plaintiffs do not satisfy the burden to keep fraud-based claims, they do so for the lower-burden claims.

For negligent misrepresentation, the District Court held that "Plaintiffs do not convincingly argue that Pinto's statements to Bernard about the frequency and duration of his visits to Joanne are misrepresentations of present fact, rather than a promise of future conduct." *Wrigley* at *12. This is erroneous for two reasons. First, on summary judgment, Plaintiffs do not need to "convincingly argue" – they

merely need to show that it is "fairly possible" that their result is right. *Klein*, 913 F.3d at 78.

Second, Pinto's statements to Bernard were indeed "misrepresentation of present fact." Every time a party to a long-term contract submits invoices, by doing so, he represents that the terms of the contract are being performed as agreed, which is why he is seeking payment without asking to amend the contract. By submitting his invoices, Pinto was continuously representing that these were funds he was owed on balance, i.e., that he was not receiving money from other sources. Those representations were false. Had Plaintiffs known that Pinto was secretly withdrawing funds from bank accounts, they would have fired him then, or at least would have demanded to subtract withdrawn amounts from his invoices.

Plaintiffs also satisfied other elements of the negligent misrepresentation claim, at least for summary judgment stage. They showed sufficient evidence that Bernard's relationship with Wrigley was an agency relationship. Bernard retained Wrigley to work on Bernard's behalf and for Bernard's benefit, and she did so, which is the definition of agency. Pinto was the agent of both Wrigley and Bernard. Both Bernard and Wrigley retained Pinto; Pinto was required to work on Bernard's behalf and his benefit; Bernard supervised Pinto and paid him. A-246, A-247, A-248.

40

*G. The District Court Erred in Concluding that Defendants Produced Admissible Evidence of Pinto's Disposition of the Disputed Funds.*

The District Court held:

> [Joanne and Pinto made] sworn statements detailing how Pinto disposed of the disputed funds. Summary judgment is warranted where the non-movant's "allegations are not substantiated in any way and most are directly contradicted by the affidavits of those who would have first-hand knowledge of the incidents in question." Scotto v. Almenas, 143 F.3d 105, 115 (2d Cir. 1998). Accordingly, Plaintiffs have failed to proffer any record evidence raising a triable issue of fact as to whether Pinto's invoices contained false representations—*i.e.,* that Pinto improperly retained the funds he withdrew from Joanne's bank accounts and received on her behalf from the SSA without reporting them…

*Wrigley*, at *13.

As discussed in sections I.D-I.E, *supra*, the District Court erred in finding that nonmovants-Plaintiffs failed to substantiate their allegations "in any way". Here, the District Court also erred in concluding that Joanne and Pinto made "sworn statements *detailing* how Pinto disposed of the disputed funds," *Id.* (emphasis added). They made no such statements.

Defendants submitted declarations of Pinto and Joanne. Pinto's *entire* declaration (aside from two pro forma paragraphs) is below:

> 2. I have reviewed all my invoices with respect to the services I provided for Joanne Black from April 2013 to September 2014. My invoices do not contain any false representations. I incurred each and every expense listed in my invoices, and more that I did not list on the invoices.

41

> 3. Additionally, the representations in the invoices regarding the hours worked are accurate. From April 12, 2013 to June 3, 2013 I and/or my employees worked all hours of each day to secure, monitor, and care for Joanne.
> 4. I did not steal from Joanne or the Supplemental Needs Trust. I never retained for my personal benefit any funds from her Social Security Disability benefits, or from her bank accounts at Chase or Wells Fargo.

Pinto Decl. ¶ 2-4.

It has *no details* of any asset dispositions.

In his deposition, Pinto cryptically testified that at some unknown time, he put money into some mystery "lock box", located at unknown place. A-169. When Pinto was asked where, when, and how the money was removed from that box, he said that he spent unknown sums for unspecified "expenses for Joanne", mystery "damages from the past", and unspecified "withdrawals" for Joanne. Pinto Dep. at 264:11-264:15. There are *no details* on asset disposition there.

Joanne's declaration likewise does not satisfy *Scotto*. Joanne has no "first-hand knowledge of the incidents in question", as is required by *Scotto*. *Id*. Pinto was disposing assets outside psychiatric hospital, while Joanne was involuntarily committed in psychiatric hospital.

Joanne's declaration is inadmissible, see *infra* Part V. Even if it is admissible, it contains only vague conclusory statements, often implausible, self-contradictory, made without first-hand knowledge. Her declaration asserted that

Pinto placed money "in a secure location that I was aware of" (Joanne Decl. ¶ 11), but gave no details as to what that "secure location" was; where it was; how and especially *when* Joanne learned about its existence; and where the money subsequently went from it. Her declaration did not list any amounts, dates, channels of asset transfers; no details as to the form in which the assets were stored in that "secure location" (cash? gold? sports cars?).

The rest of Joanne's declaration is similarly devoid of facts, stating simply that Pinto bought for her some unspecified items, without details re which items, when they were bought, where, at what price, for what purpose. Joanne mentions that Pinto "used some of the withdrawals to reimburse himself for out-of-pocket expenses", A-99, but does not give any facts -- when, how much, for which prior expenses, incurred when, for which purposes, and, critically, whether Pinto was already reimbursed for those expenses by Plaintiffs.

In support of Pinto's undocumented and fantastical hourly billing (168 hours a week), Joanne merely says that "I was not taking any medication at that time and was severely struggling with mental illness. [Pinto] and his employees worked tirelessly to rescue me from my circumstances, which were quite perilous at the time." (Joanne Decl. ¶ 7). How many hours they worked, how many people, performed which services, where? Nothing. This is not only devoid of facts, but

self-contradictory: Joanne simultaneously concedes that she was psychiatrically incapacitated and yet purports to testify to Pinto's work hours.

In sum, Defendants "detailed" nothing. They provided no specific facts, no documents.

## II. District Court Erred in Dismissing All Claims Related to Pinto's Theft of Joanne's SSDI Benefits.

Pinto, without authorization or disclosure, re-routed Joanne's SSDI benefits to himself, in violation of SSA rules. When caught, he simply said he "never retained for my personal benefit" these funds. Pinto Decl. ¶ 4. **Pinto produced no documents for where the money subsequently disappeared, and gave no specifics as to the times and channels of his alleged "returns of assets".** Joanne signed a declaration, stating that she "directed [Pinto] to place the [SSDI funds] in a specific location that I knew was safe." Joanne Decl. ¶ 14.

Plaintiffs brought claims in fraud (second cause of action), fraudulent misrepresentation (third), unjust enrichment (fourth and fifth), money had and received (seventh and eighth), and negligent misrepresentation (thirteenth cause of action) based on Pinto's theft of SSDI benefits.

The District Court found that Pinto, without authorization and disclosure, transferred SSDI benefits to himself, and failed to produce any documents to show their subsequent disposition. Still, the District Court granted summary judgment

44

for Defendants because Pinto *said* he did not keep the money, and Joanne said *she thought* Pinto did not keep the money (though she had no firsthand knowledge thereof), while Plaintiffs did not produce specific evidence that he did.

Plaintiffs incorporate all arguments from Section I.G., *supra*. Joanne's declaration, referring to a mystery "secure location" where Pinto supposedly put her SSDI money when she was in the hospital, is hearsay, since Joanne has no firsthand knowledge about it. Pinto's declaration should be stricken as conclusory because it lacked any specific facts as to where, when, how he stored SSDI money, and what happened to that money afterwards.

Both declarations, and Pinto's deposition testimony, should also be disregarded, per *Reeves,* 530 U.S. at 150, because "the jury is not required to believe" a story about the man who (a) re-routed SSDI payments to himself without authorization, in violation of SSA rules, and (b) concealed this until caught, and (c) secretly stored the illegally-transferred money in a mystery "secured location", entirely undocumented, and (d) failed to produce any evidence of the existence of such "secure location", and explain the lack of paper trail, and (e) failed to state any specific facts about the "secure location" or about the subsequent movement of that money in his declaration or his deposition.[1]

---

[1] In deposition, Pinto simply replaced Joanne's term "secure location" with "lockbox", but gave virtually no specific details about it. *Supra* Part I.G.

Once Pinto's and Joanne's statements are disregarded, per *Reeves,* 530 U.S. at 150, summary judgment is defeated.

The District Court erred in not drawing "the strongest inferences against [Defendants]" from the fact that Defendants failed to produce any documentary evidence, showing what Pinto did with Joanne's SSDI money after he illegally re-routed it to himself. *Messina*, 15 A.F.T.R.2d at 949; see also *Felice,* 426 F.2d at 194–95; *Case,* 329 F.2d at 936; *Matarese*, 158 F.2d at 637. Once the requisite adverse inferences are made, the summary judgment is defeated.

The District Court erred in failing to view Pinto's claims about disposition of SSDI funds in the context of the whole evidence. The argument here is the same as for Pinto's unauthorized, unreported withdrawals from bank accounts, see *supra* Part I.

Further, the District Court erred in not drawing all reasonable inferences in favor of nonmovants-Plaintiffs. "Summary judgment is inappropriate when the admissible materials in the record make it arguable" that the claim has merit, *Jasco Tools,* 574 F.3d at 151. Once the court properly disregards Pinto's implausible, undocumented statements, and Joanne's implausible declaration full of mostly hearsay, and draws inferences against Defendants for their failure to turn over documentary evidence, there is nothing left to Defendants' case. It is at least "arguable" that Pinto lied, and thus, the summary judgment is defeated.

The District Court erred in not applying a proper, lower standard of proof (preponderance of evidence) to Plaintiffs' SSDI claims (money had and received and negligent misrepresentation), and instead, talking only about the higher fraud-based standard.

## III.  District Erred in Dismissing Claims Related to False Expense Reports, Inflated Bills, Double-Billing

Plaintiffs brought claims based on Pinto's false expense reports, inflated bills, and double-billing: fraud (first cause of action), fraudulent misrepresentation (third), unjust enrichment (forth), money had and received (sixth), conversion (eleventh), constructive fraud (thirteenth), and negligent misrepresentation (fourteenth). Notably, four out of seven do not require a heightened "clear and convincing" standard.

The District Court held:

> Plaintiffs argue that they have satisfied their burden... because they have demonstrated that Defendants failed to produce receipts or other documentation backing up Pinto's claimed expenses, and that Pinto listed his expenses on his invoices in round numbers...

> Although Pinto's failure to document his expenses is perhaps troubling, it is not clear and convincing evidence that he never in fact incurred those expenses. Nor is Plaintiffs' unsupported assertion that "truthful expenses do not come all in round numbers" sufficient evidence from which a reasonable jury could find that Pinto's representations are false.

> Plaintiffs' argument devolves into something of a Catch-22 on summary judgment... If the numbers on the invoices are self-

47

> evidently fraudulent, then [Plaintiffs] could not have "reasonably
> relied" on the clearly false numbers… [But] if the numbers on the
> invoices are not self-evidently fraudulent, Plaintiffs have failed to
> satisfy their burden of proof and cannot proceed with their fraud
> claims.

*Wrigley* at *7.

This holding is erroneous for the reasons discussed above in Parts I and II,
*supra*; Plaintiffs incorporate those arguments here.

First, the court "must disregard all evidence favorable to the moving party
that the jury is not required to believe." *Reeves,* 530 U.S. at 151. The jury does not
have to believe that Pinto's all-round-number expense reports are true, especially
when unsupported by documents, and even unsupported by Pinto's own
conclusory, fact-free declaration. The jury also does not have to believe Pinto's
proclamations at deposition, entirely devoid of any specifics, self-serving, and
failing to explain the absence of any paper trail.

Second, the District Court erred in holding that "[a]lthough Pinto's failure to
document his expenses is perhaps troubling, it is not clear and convincing evidence
that he never in fact incurred those expenses." *Wrigley* at *7. To begin with, the
"clear and convincing evidence" only applies to a subset of Plaintiffs' fraud-based
claims, but not to claims for unjust enrichment, money had and received,
conversion, and negligent misrepresentation. There, preponderance of evidence is
the standard. But the District Court dismissed nonfraud claims, albeit in a separate

48

section of the opinion, without drawing any distinctions with respect to evidentiary standards.

More importantly, the District Court uses the wrong summary judgment standard even for fraud claims. The fact-finder should make "the strongest inferences that the opposing evidence will permit… against [the party who has the sole access to evidence and fails to produce it]". *Alba*, 111 A.D.2d at 294. "[A] strong adverse inference" is properly drawn when the party "failed to explain in detail the after-the-fact reconstructed time records submitted, neglected to submit any of the litigation papers she claimed to have prepared, and refused to introduce the contemporaneous time records in her possession or seek their redaction in view of her claim that they included work product." *In re Krewer*, 658 N.Y.S.2d, at 256.

See also *Felice*, 426 F.2d at 194–95; *Case* , 329 F.2d 936; *Matarese*, 158 F.2d at 637; *Pacific-Atlantic S. S. Co.*, 175 F.2d at 636; *Silver Chrysler Plymouth, Inc.*, 370 F. Supp. at 585; *Carney*, 1985 WL 2242, at *4; *Sawyer*, 233 A.D.2d 127; *Gruntz*,163 A.D.2d 564; *Noce,* 161 N.Y.S.2d 1; *Turner Press*, 429 N.Y.S.2d at 240.

The court must not take Defendants' proclamations neutrally; it must draw adverse inferences against them due to their failure to produce paper trail.

49

Third, the District Court erred in reviewing Pinto's bizarre billing in isolation from the rest of the evidence in this case. See *Howley,* 217 F.3d 151. There is a striking pattern across all claims: Pinto has no documentary support for his alleged expenses, *and* for bizarre proclaimed "work hours", *and* for subsequent whereabouts of the money he withdrew from banks, *and* for the whereabouts of SSDI benefits, etc.

Pinto's bizarre 168-hour workweek might have passed master in isolation, but the pattern of secretive, undocumented activities across all claims makes it at least "fairly possible" that the expenses are fraudulent. "Where either of the two results… is fairly possible, [we] must let the jury decide the matter." *Klein*, 913 F.3d at 78.

Forth, the District Court erred in holding that

> Plaintiffs' unsupported assertion that "truthful expenses do not come all in round numbers" [are not] sufficient evidence from which a reasonable jury could find that Pinto's representations are false.

*Wrigley* at *7.

"A district court … cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS,* 436 U.S. 748, 756 (1978). The District Court cannot rule on whether Plaintiffs' assertion that "truthful expenses do not come all in round numbers" is credible or supported. The District Court might think that real expenses do come in all round numbers, even for items

like plane tickets, rental cars, or gas. But a reasonable jury will likely conclude otherwise, because in real life, round numbers simply never happen. Plaintiffs do not need to bring any "support" for the assertion that round numbers don't happen; the jury is required to "use common sense, common experience and common good judgment in drawing inferences from facts." *Gleason*, 616 F.2d at 14. Knowing that all-round-number bills never happen is a part of common sense and common experience.

Finally, the court's Catch-22 reasoning is erroneous. To begin with, reliance is not an element for non-fraud-based claims. This argument does not apply to four out of seven claims that Plaintiff brought based on Pinto's false expense reports and inflated bills.

To the point: "reasonable reliance" in fraud cases requires "inquiry and investigation… through ordinary intelligence, to ferret out the reliability or truth." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006). Whether the victim's inquiry was reasonable depends on circumstances, such as time pressure, relationship between parties, type of false representation, the victim's actions that the fraudster requested, the victim's specific susceptibility to fraud, etc. *Id*.

The jury today and Bernard at the time of fraud are looking at different evidence. The jury is required to look at all evidence as a whole that accumulated

51

over time up to today, not piecemeal, not in real-time for each event, *Reeves,* 530 U.S. at 151; *Klein*, 913 F.3d at 78. In contrast, reasonable reliance has no such requirement: a victim of fraud cannot look at the evidence that did not exist at the time of his victimization, or to which he had no access. "Reasonable reliance" does not require perfection from the victim – only reasonableness. Reasonable reliance is routinely found even when a victim fails to draw logical inferences from numerous conflicting, ambiguous pieces of evidence, especially under extreme time pressure, in distress, or when false representations are coming from a trusted person. *Crigger*, 443 F.3d at 234. A victim can make a grave mistake, and yet rely reasonably; a holding to the contrary would make it impossible to bring fraud cases, as any fraud case would then devolve into victim-blaming.

When Pinto had submitted his false bills, Bernard did not yet know about Pinto's other misconduct; today's jury knows it. Bernard was making decisions with much less information than what today's jury has. Bernard was making his decisions under extreme time pressure, and that pressure was manufactured by Defendants to defraud him, A-247; today's jury has no such difficulties. Bernard reasonably trusted a family member who injected herself into his life at the funeral of his mother and started stealing from him soon thereafter, benefiting from his grave distress, A-29-A-32; today's jury has no such cognitive limitations. Trusting Wrigley, delegating inspections of Pinto's paperwork to Wrigley was reasonable

reliance for Bernard, on the basis of the information available to him at that time. The jury is expected to draw inferences against Defendants from the fact that Defendants failed to turn over any documentary evidence of Pinto's alleged expenses, see *Alba*, 111 A.D.2d 294. In contrast, reasonable reliance has no such requirement: Bernard reasonably trusted a family member (Wrigley) who said that more bills will be coming, and that she already inspected Pinto's bills, and vouched for their accuracy. A-246, A-247, A-248, A-119.

District Court appears to think that Bernard Black should be held to a higher investigatory standard, because he is "a genuine expert in finance". *Wrigley* at *7. Not so. First, the "genuine expert" throwaway phrase is a mere two-line summary of a lengthy phone conversation, generated by a court visitor, written *in her own words*. A-297. This is not a declaration by Bernard.

Second, Bernard is an academic statistician, conducting statistical research in, among other things, corporate finance. While he knows a narrow field of academic statistical finance, he is not a specialist in fraud detection, in forensic finance, or accounting. He is surely not an expert in dealing with human-manipulator fraudsters like Wrigley, who latched onto the distress that Bernard suffered from his mother's death to gain his trust and steal from him. A-246-248.

There is no Catch-22. The jury can easily find that Pinto's all-round-number expenses are fraudulent on their face, especially given that Pinto failed to turn over

any documentation, and especially given Pinto's other misconduct – and can simultaneously find that Bernard reasonably relied on Pinto's submissions at the time when they were made, under time pressure, because of Wrigley's vouching and claims that she inspected the bills, and because of Bernard's unique susceptibility to fraud due to his distress after his mother's death. Such weighing of the evidence is the job of the jury, not a judge. *Liberty Lobby*, 477 U.S. at 255.

## IV.  The District Court Erred in Dismissing Claims Related to Pinto's Fraudulent and Inflated Charges for Services not Provided.

### A.  Services – April 12-22, 2013

Pinto submitted numerous fraudulent time logs, showing, e.g., that his driver worked 33 straight hours, and Pinto himself worked 153 and 168 hours a week. District Court granted summary judgment. It reasoned that, although Pinto could not have worked 153 hours straight: "*it is plausible* that Pinto was 'on call' for 153 hours straight, and accordingly billed for that time." *Wrigley* at *7 (emphasis added).

But "plausible" is not the standard on summary judgment.

> In deciding a motion for summary judgment, District Court is not to resolve issues of fact... [T]he court is required to resolve all ambiguities, and to credit all factual inferences that could rationally be drawn, in favor of the party against whom summary judgment is sought. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ramseur v. Chase Manhattan*

*Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir. 1987).

*Howley*, 217 F.3d at 150-51.

"Where either of the two results… is fairly possible, [we] must let the jury decide the matter." *Klein*, 913 F.3d 78. If it is merely "plausible" that Pinto was billing for being "on call", the summary judgment is defeated.

Further, the "on call" theory was invented by the District Court; Defendants did not even argue it on summary judgment: their only claim in defense of the inflated-hours claim was that Pinto and his crew in fact worked those hours. A-118-119. Defendants produced no evidence that Pinto's payment structure had anything to do with being "on call". An ordinary reading of his bills shows that Pinto charged everywhere for actual working. Defendants' motion for summary judgment admitted that the only relevant debates Pinto had with Bernard were about *hours of work*. *Id*. Any doubts must be resolved in favor of Plaintiffs-nonmovants. Finally, the "on call" copout does not even help: being "on call" means being available at any and all time during a certain period; it is physically impossible to be "on call" for 153 straight hours.

The court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. The jury is not required to believe that the bills that list worked hours are somehow meant to list

hours "on call", where there is no evidence of any "on call" payment agreement. Once the unsupported "on call" speculation is removed, there is no basis for summary judgment. In any case, it is the jury's job to interpret what Pinto's bills meant. *Liberty Lobby,* 477 U.S. at 255.

Likewise, Pinto billed for 33 straight hours of work of his driver, which is physically impossible, and thus facially fraudulent. District Court granted summary judgment because: "the invoice bills for the driver's time, not necessarily for the driver's work. Standing alone, the invoice docs not suggest that the driver worked for 33 hours straight." *Wrigley* at *8.

This is not the summary judgment standard. Defendants produced no evidence whatsoever that Plaintiffs paid driver "for time", rather than "for work"; they did not even argue that. The ordinary reading of time logs indicates otherwise. Any doubts must be resolved in favor of Plaintiffs-nonmovants.

The same is true for the District Court's discussion of Pinto's extravagant billing hours for his bodyguard. The District Court concluded that "this [billing] too seem plausible". *Wrigley* at *8. But "seems plausible" is not the summary judgment standard. If Defendants' preferred interpretation is merely "plausible", then, it is at least "fairly possible" that it isn't so, defeating summary judgment. *Klein*, 913 F.3d at 78.

As to the possible resurrection of the Catch-22 argument for Pinto's fraudulent billing, Plaintiffs incorporate their arguments from Section III.

### B. Services – Weekly Visit Duration and Frequency
#### (1) June through December, 2013.

Pinto submitted numerous fraudulent bills for visiting Joanne in the psychiatric hospital. Between June and December 2013, he sent hourly bills, and between January and September 2014, he had a flat rate with the promise of a three-times-a-week visits. As with all claims here, Pinto did not produce a single piece a paper to support his bills.

Plaintiffs produced a hospital visitor log for May 22, 2014 through August 31, 2014, the only period for which the hospital retained records. The log shows that Pinto visited Joanne only 1.2 times per week, not 3 times a week, for which he billed. A-235. Pinto's sole evidence to the contrary (aside from Joanne's declaration) is his own testimony, where he claimed, fantastically, that he repeatedly entered a guarded mental hospital in New York, which hosts involuntarily committed patients, through employee entrance, without signing in, even though he was not an employee. *Wrigley* at *9. Since "jury is not required to believe" such statements, this testimony must be disregarded for summary judgment purposes. *Reeves*, 530 U.S. at 151.

The District Court credited Pinto's implausible proclamations because "[t]his is consistent with statements made by Joanne's doctor… that 'Pinto has been there for every aspect of her care consistently.'" *Wrigley* at *9. But we don't know what that doctor defines as "consistently": one time a week (as supported by the visitor log) might well be "consistent" for him. Such weighting of the evidence is the job of a jury, not the court. *Liberty Lobby,* 477 U.S. at 255. If it is at least "fairly possible" that Pinto lied when he said that his visits are not recorded because he routinely sneaked into a guarded, closed psychiatric facility through the employee door, with no identifiable purpose, then, "[we] must let the jury decide the matter." *Klein*, 913 F.3d at 78.

District Court granted summary judgment for the period of Pinto's fraudulent hourly billing because it reasoned that the visitor log did not cover that period, and the log was Plaintiffs' only evidence of Pinto's actual visits. Since Pinto *said* he visited as much as he billed (without any documentary evidence), and Joanne *thinks* that's how much Pinto visited (while she was in a state of a profound psychiatric collapse), the summary judgment was granted.

This is an error for the reasons discussed in Sections I and II. The visitor log was inconsistent with Pinto's claims of visits during the entire period. The fact-finder should use "common sense, common experience and common good judgment in drawing inferences from facts." *Gleason*, 616 F.2d at 14.

The jury could easily find that, since Pinto lied about his visit frequency and duration during May-August 2014, he also lied about his visits during the prior months. The court should interpret Pinto's failure to produce any paper trail of his alleged visits against Defendants. See *Felice,* 426 F.2d at 194–95; *Case*, 329 F.2d 936; *Matarese*, 158 F.2d at 637; *Messina*, 15 A.F.T.R.2d at 949. The jury is not required to believe Joanne's statements about Pinto's visits, and Pinto's self-serving, implausible statements, contradicted by visitor log; thus, all these statements should be disregarded for summary judgment, per *Reeves,* 530 U.S. at 150. Because all inferences must be made against movants-Defendants, and all evidence must be taken as a whole, it is at least "fairly possible" that Pinto lied in his hospital-visit billing, just as he lied everywhere else; thus, per *Klein*, summary judgment is improper. *Klein*, 913 F.3d at 78.

### (2) January through September, 2014.

The District Court granted summary judgment for the period covered in the visitor log too, despite the documented gap between Pinto's actual and proclaimed visits. Plaintiffs argued that Pinto promised to visit Joanne three times a week; he failed to do so; throughout this flat-billing period, Pinto was falsely representing that he was performing his obligations. Had he not been so representing, Bernard would have fired him. This constituted the claim of fraudulent misrepresentation, third cause of action. Compl. ¶616-624.

The District Court rejected this claim because "the invoices for the relevant time period make no representations regarding the requisite number of visits or the duration of those visits... As a result, the invoices cannot be a standalone basis for a fraud claim." *Wrigley* at *11.

This is an error. When a party to a long-term contract submits invoices without rehashing the entire contract in each invoice, that party represents that the terms of the contract are being performed; otherwise, the invoice would have to say so. A reasonable person interprets such invoices as a representation that the submitter in fact performed the job he promised to perform.

By submitting invoices, Pinto was representing that he was performing his contract, visiting Joanne three times a week. Those representations were false. Any doubts as to the interpretation of parties' contract, and as to the interpretation of representations that parties made to each other by sending invoices, are the matters for the jury. "[A]ll justifiable inferences are to be drawn in … favor [of nonmovants]." *Liberty Lobby,* 477 U.S. at 255. See also *Adickes,* 398 U.S., at 158–159. Summary judgment is especially improper, given that the court must draw "the strongest inferences" against Defendants due to their failure to turn over any supporting documents, and must view all evidence of Pinto's misconduct as a whole, across all claims. *Messina*, 15 A.F.T.R.2d at 949.

## V.  District Court Erred in Relying on Inadmissible Declaration of Joanne

Plaintiffs asked to strike Joanne's declaration as inadmissible. District Court refused and heavily relied on Joanne's declaration in its decision. This is an error.

A declaration submitted in support of a motion for summary judgment "…must be made *on personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or *declarant is competent* to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). (emphasis added).

Joanne's declaration is inadmissible because: (1) she has no personal knowledge of the events to which she testified; (2) she has no mental capacity to testify. The lack of personal knowledge is discussed in Sections I-IV, *supra*. This section discusses Joanne mental incapacity.

During the time relevant to this action (2012-2014), Joanne was in a state of an acute psychiatric crisis: for part of that time, homeless and off medication; for the remainder, committed involuntarily in a psychiatric facility, paranoid, with limited cognitive capacity.

The court visitor appointed by the Denver Probate Court stated that in 2012, Joanne was "fragrantly delusional and very paranoid. Face to face contact was not able to be made." In 2014, Joanne "said that she does not remember having any contact with [the court visitor]". In September, 2014, Joanne "sounded increasingly suspicious and on the verge of being paranoid." A-295. As such, Joanne's

61

declaration, purporting to testify to her memories of the events that occurred in 2012-2014 have to be stricken. It is irrelevant whether Joanne's condition since somewhat improved; a person cannot testify to the event that she could not comprehend at the time of witnessing.

Joanne is unable to testify to any financial matters, at any time. Joanne has a lifelong incapacity to understand money. Wrigley wrote to the court that Joanne does not "understand the value and difference between $20 and $20,000 or two million dollars…. Joanne's lifelong diagnosed chronic illness of paranoid schizophrenia causes her to react in many financially irresponsible ways." A-286. Joanne has never managed her own financial affairs, never held a job, and never exhibited any understanding of money in her entire life. A-205. Joanne's psychiatrist, Dr. Shirke, wrote to the court: "It is my medical opinion that Joanne Black is not capable of managing her own financial situation, and *will not become capable of doing so in the future*… In the past, Ms. Black has done moderately better when on medication, but even when on medication, she has had trouble in living even in a halfway house, and has been unable to live in one place for a sustained period on her own. (Emphasis added).

As of the time of Joanne's declaration (and now), Joanne had (1) a financial conservator, (2) a guardian ad litem, (3) a court-appointed attorney, (4) a psychiatric social worker paid by her conservator, and (5) a second social worker

assigned to her by the State of New York. She lives in a specialized living facility for mentally disabled adults. *Id*.

Joanne lacks the capacity to testify to any matters that happened during the time of her acute psychiatric crisis (2012-2014). For any period of her life, she lacks capacity to testify on financial matters or other matters requiring meaningful cognitive functioning. Her testimony, purporting to analyze Defendants' financial documents and approve them, is inadmissible and should not be relied on.

## CONCLUSION

For the reasons stated, the District Court Opinion and Order granting summary judgment in favor of Defendants-Appellees should be reversed and the case remanded for trial on all claims.

Dated:  Evanston, Illinois
      June 16, 2022

                                  Respectfully submitted,
                                  Bernard S. Black, pro se

                                  2829 Sheridan Place
                                  Evanston IL 60201
                                  Tel: (847) 807-9599
                                  bernardsblack@gmail.com

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 13,966 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font (12 point for footnotes).

Dated: Evanston, Illinois
     June 16, 2022

Respectfully submitted,
Bernard S. Black, pro se

*Bernard S. Black*

2829 Sheridan Place
Evanston IL 60201
Tel: (847) 807-9599
    bernardsblack@gmail.com

46